IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SCHNITTA SCHNETTE PATRICK**                                                        **PLAINTIFF**

**v.**                                                                       **CIVIL ACTION NO. 3:20-cv-333-TSL-MTP**

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION**         **DEFENDANT**

### REPORT AND RECOMMENDATION

Plaintiff Schnitta Schnette Patrick brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claims for disability insurance benefits and supplemental security income. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be affirmed in part and reversed in part and this action be remanded for further consideration.

### PROCEDURAL HISTORY

On October 7, 2016, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that she has been disabled since January 5, 2016, due to osteoarthritis, sarcoidosis, plantar fasciitis, cervical arthritis, depression, cervical radiculopathy, obesity, asthma, lumbar radiculopathy, bilateral carpal tunnel, and lumbar disc disease. (Administrative Record [20] at 240-41; 336-45).[1] After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") conducted a hearing, and on May 21, 2019, the ALJ issued a decision finding that Plaintiff was not disabled. ([20] at 127-40). Plaintiff then appealed the ALJ's

---

[1] Plaintiff previously applied for disability insurance benefits and supplemental security income on November 4, 2013, alleging that she had been disabled since January 17, 2012. On January 7, 2016, however, an Administrative Law Judge found that Plaintiff was not disabled. ([20] at 224-35).

1

decision to the Appeals Council. On March 17, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([20] at 6-10). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his May 21, 2019, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[2] and determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 5, 2016, the alleged disability onset date. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, lumbago, osteoarthritis, sarcoidosis, and reflex syncope. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 04, Subpart P, Appendix 1. ([20] at 130-31).

---

[2] This analysis requires the ALJ to make the following determinations:
   (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
   (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
   (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
   (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
   (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)[4] except with a sit/stand at will option, never reaching overhead bilaterally with all other bilateral reaching frequently, occasionally climbing ramps/stairs/ladders, no climbing ropes/scaffolds, occasionally stoop, kneel, crouch and crawl, and no work at unprotected heights or around dust, odors, fumes and pulmonary irritants." ([20] at 132). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. Accordingly, the ALJ determined that Plaintiff was not disabled. ([20] at 138-40).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*.

---

[3] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff presents five issues for judicial review: (1) whether the ALJ erred by failing to use SSR 12-2p to determine if Plaintiff had a medically determinable impairment of fibromyalgia; (2) whether the ALJ erred by not finding that Plaintiff's rheumatoid arthritis was a severe medical impairment; (3) whether the ALJ erred by not giving Dr. Jason Taylor's opinion controlling weight; (4) whether the ALJ failed to perform a proper credibility analysis in rejecting Plaintiff's subjective complaints; and (5) whether the ALJ erred by finding that Plaintiff did not have an impairment or combination of impairments that met Listing 1.04.

**Issue 1: Fibromyalgia**

At step two of the sequential analysis, an ALJ determines whether the claimant has a medically determinable impairment that is severe. A medically determinable impairment results from "anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." *Randall v. Astrue*, 570 F.3d 651, 657 (5th Cir. 2009).  An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).  An impairment is not severe "if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Plaintiff bears the burden of proving that she suffered from a severe impairment. *See Giles v. Astrue*, 433 Fed. Appx. 241, 246 (5th Cir. 2011).

As previously mentioned, the ALJ found that Plaintiff had the following severe impairments: obesity, lumbago, osteoarthritis, sarcoidosis, and reflex syncope.  The ALJ found that another medically determinable impairment—depression—was not severe.  Additionally, the ALJ found that Plaintiff did not have a medically determinable impairment of carpal tunnel syndrome. ([20] at 130-31).

Plaintiff argues that the ALJ erred by failing to consider whether her fibromyalgia was a medically determinable impairment.  Fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *See* SSR 12-2p.  Social Security Ruling 12-2p establishes how an ALJ determines whether a claimant has a medically determinable impairment of fibromyalgia.  The record must contain a physician's diagnosis of fibromyalgia and evidence to satisfy one of two tests, one based upon the 1990 American Colleges of Rheumatology Criteria for the Classification of Fibromyalgia and the other based upon the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. *Id*.

The 1990 test requires (1) a history of widespread pain; (2) at least eleven positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded.  The 2010 test is the same as the 1990 test, expect for the second element.  Instead of eleven positive tender points, the claimant must show repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, such as fatigue, cognitive problems, depression, anxiety, or irritable bowel syndrome. *Id*.

Plaintiff points to evidence that arguably supports a finding that her fibromyalgia was a medically determinable impairment.  On March 20, 2017, rheumatologist, Dr. Jason Taylor, noted that Plaintiff suffered from fibromyalgia and had several tender muscle points consistent with fibromyalgia.  Dr. Taylor also noted that Plaintiff had taken Flexeril, Cymbalta, Lexapro, and Neurontin and had dealt with pain and weakness for years. ([20] at 844).  During an examination on March 31, 2017, another physician, Dr. Carol Harris noted: "myalgia: chronic, not controlled" ([20] at 784).  Later, on May 1, 2017, Dr. Taylor noted that fibromyalgia was Plaintiff's primary assessment. ([20] at 842).

On November 28, 2017, Dr. Taylor completed an RFC questionnaire concerning fibromyalgia.  He indicated that Plaintiff met the American College of Rheumatology criteria for fibromyalgia.  He stated that Plaintiff suffered from "pain all over, dizziness and fatigue." ([20] at 455).  Additionally, Dr. Taylor ordered various tests during the time he was assessing Plaintiff's fibromyalgia. ([20] at 830-46).  Plaintiff argues that these tests suggest that Dr. Taylor ruled out other potential sources of her pain as required by SSR 12-2p.

Despite these findings by Plaintiff's treating physicians, the ALJ did not mention fibromyalgia or SSR 12-2p in his step two analysis.  The ALJ listed the impairments he considered to be severe, explained that he did not consider depression to be severe, and

6

explained that he found carpal tunnel syndrome was not a medically determinable impairment. The ALJ, however, did not discuss whether fibromyalgia was a medically determinable impairment, much less a severe impairment.[5]

The ALJ's failure to evaluate Plaintiff's fibromyalgia at step two requires remand. On the current record, the Court cannot say that the ALJ's failure to evaluate Plaintiff's fibromyalgia at step two was harmless. All medically determinable impairments, including non-severe impairments, must be taken into account in determining a claimant's RFC,[6] and the Court is not confronted with a situation where an ALJ erred by finding that an impairment was not severe but nevertheless considered the impairment and its effects at the subsequent steps of the sequential process. *See, e.g.*, *Powell v. Comm. of Soc. Sec.*, 2021 WL 789891, at *3 (S.D. Miss. Feb. 2, 2021) ("the question of whether the ALJ . . . properly found a particular impairment to be 'severe' . . . is 'irrelevant' so long as the ALJ subsequently considered the impairments found to be 'non-severe' at later steps").

Here, the ALJ did not address whether fibromyalgia was a medically determinable impairment or assess its severity. The Court is unable to determine whether the ALJ properly considered the functional impact of Plaintiff's fibromyalgia at the subsequent steps of the sequential process. *See Vertron L. v. Kijakazi*, 2021 WL 6274749, at *4 (Dec. 13, 2021) ("But

---

[5] Although the Commissioner did not raise the issue in her briefing, the undersigned notes that Plaintiff did not list fibromyalgia as one of her conditions in her applications for social security benefits. An ALJ has a duty to investigate and fully develop the facts. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). The ALJ's duty, however, "does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Id*. Although Plaintiff did not initially list fibromyalgia, this condition was clearly indicated on the record, considering Dr. Taylor's diagnosis and his November 28, 2017, report concerning fibromyalgia, entitled "Residual Functional Capacity Questionnaire FIBROMYALGIA." ([20] at 455; 844). Accordingly, the ALJ had a duty to consider fibromyalgia.

[6] *See* 20 C.F.R. § 416.945(e).

such an error is not harmless, even if the analysis continues beyond step two, if the ALJ fails to apply the severity analysis to an identified impairment and, based on that error, proceeds to the later steps of the sequential analysis only as to the other claimed impairments.").

The application of SSR 12-2p and the ALJ's consideration of fibromyalgia could conceivably alter the ALJ's conclusions about the severity of Plaintiff's impairments and her resulting limitations. Under the circumstances presented, this action should be remanded to allow the ALJ to evaluate Plaintiff's fibromyalgia in accordance with SSR 12-2p.

On remand, the ALJ's consideration of the evidence concerning fibromyalgia may impact the ALJ's evaluation of Plaintiff's subjective complaints and Dr. Taylor's opinions. Accordingly, the Court need not address the third issue (whether the ALJ erred by not giving Dr. Taylor's opinion controlling weight) or fourth issue (whether the ALJ failed to perform a proper credibility analysis in rejecting Plaintiff's subjective complaints) presented by Plaintiff. However, as the ALJ's consideration of the evidence concerning fibromyalgia is unlikely to impact the ALJ's prior findings that Plaintiff's rheumatoid arthritis was not a severe impairment and that she did not have an impairment or combination of impairments that met Listing 1.04, the undersigned will address the second and fifth issues presented by Plaintiff.

**Issue 2: Rheumatoid Arthritis**

The ALJ found that Plaintiff had the severe impairment of osteoarthritis, along with obesity, lumbago, sarcoidosis, and reflex syncope. Plaintiff argues that the ALJ erred by not finding that Plaintiff's rheumatoid arthritis ("RA") was a severe impairment. Plaintiff calls the Courts attention to Dr. Taylor's findings that she had "persistent diffuse joint pains" and "stiffness in hands." ([22] at 8; ([20] at 456). Plaintiff also points out that she took medications for RA. ([22] at 8).

Even assuming, without deciding, that the ALJ should have found that Plaintiff's RA was a severe impairment at step two, this error was harmless because the ALJ considered RA at subsequent steps of the sequential process. *See Powell*, 2021 WL 789891, at *3 ("the question of whether the ALJ . . . properly found a particular impairment to be 'severe' . . . is 'irrelevant' so long as the ALJ subsequently considered the impairments found to be 'non-severe' at later steps").

The ALJ acknowledged the requirement that he "consider all of the claimant's impairments, including impairments that are not severe." ([20] at 129). The ALJ considered Plaintiff's testimony that she had RA in her hips and hands. ([20] at 133). He noted Plaintiff's diagnoses of polyarthritis and RA. But, the ALJ also noted that Plaintiff's RA diagnosis came with a "negative rheumatoid factor." ([20] at 137; 337-44). He discussed Dr. Taylor's findings on May 1, 2017, that Plaintiff had an "excellent response" to medication and had "improvement in diffuse pain and stiffness including hand pain/stiffness/swelling." ([20] at 137; 842).

He also considered the questionnaire Dr. Taylor completed on November 28, 2017, which stated that Plaintiff had RA. ([20] at 137; 455). Dr. Taylor indicated that Plaintiff had limitations with many activities, including sitting, standings, climbing, and stooping. ([20] at 457-58). Dr. Taylor also indicated that Plaintiff had limitations with reaching, handling, or fingering, but he did not indicate that Plaintiff had any specific limitations with using hands to grasp, turn, twist, or manipulative. ([20] at 458)

The ALJ considered Plaintiff's medical records, including Dr. Taylor's assessment, and assigned limitations based on Plaintiff's impairments, including RA. The ALJ found that Plaintiff had the RFC to perform light work "except with a sit/stand at will option, never reaching overhead bilaterally with all other bilateral reaching frequently, occasionally climbing

ramps/stairs/ladders, no climbing ropes/scaffolds, occasionally stoop, kneel, crouch and crawl, and no work at unprotected heights or around dust, odors, fumes and pulmonary irritants." ([20] at 132). The ALJ's opinion reflects that RA was considered and accounted for in the RFC determination. Accordingly, this issue is without merit.

**Issue 5: Listing 1.04**

Plaintiff next contends that the ALJ erred by finding that she did not have an impairment or combination of impairments that met Listing 1.04. Plaintiff specifically argues that she met the criteria for Listing 1.04(A) and (C). At step three, Plaintiff has the burden of establishing that her impairment meets or equals the criteria in the listings. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The burden of proof to meet a listing is "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet Listing 1.04, a claimant must show she has a disorder of the spine, such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, that results in compromise of a nerve root or the spinal cord. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. In addition, a claimant must show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> . . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id*.

Here, the ALJ found that Plaintiff's impairments did not reach the level of severity required to meet or equal Listing 1.04. ([20] at 131). In support of her claim, Plaintiff points to medical records documenting her complaints of pain and the diagnosis and treatment of conditions relating to her spine. ([22] at 17). The medical records, however, do not include a diagnosis of nerve root or spinal cord compression. Indeed, the medical records demonstrate a lack of any disorder which would satisfy the stringent criteria of Listing 1.04. The ALJ noted imaging of Plaintiff's lumbosacral spine on January 26, 2016, showing no abnormalities and imaging of the lumbar spine on March 31, 2017, showing "no acute pathology." ([20] at 135-36; 600; 807). Additionally, imaging on April 4, 2016, showed mild and mild to moderate degenerative changes to the cervical spine. ([20] at 48). Plaintiff has failed to establish that no credible evidence supports the ALJ's decision. Given the evidence of record, substantial evidence supports the ALJ's determination at step three. *See Whitehead v. Colvin*, 820 F.3d 776, 780-81 (5th Cir. 2016).

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that:

1. The Commissioner's final decision be affirmed in part and reversed in part;

2. This action be remanded to the Commissioner for further administrative proceedings in accordance with this report and recommendation; and

3. All other relief requested by Plaintiff be denied.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing

party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 30th day of June, 2022.

s/ Michael T. Parker
United States Magistrate Judge